IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WAHOO FITNESS L.L.C., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. _____ |
| | ) | |
| ZWIFT, INC., | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff Wahoo Fitness L.L.C. ("Wahoo") files this Complaint for patent infringement against Defendant Zwift, Inc. ("Zwift"). Wahoo alleges:

## THE PARTIES

### A. PLAINTIFF WAHOO

1.      Wahoo is a Georgia limited liability company with its principal place of business at 90 W. Wieuca Road, Suite 100, Atlanta, Georgia 30342.

2.      Wahoo was founded in 2009 by Chip Hawkins in Atlanta, Georgia. An avid biking enthusiast, Chip used his business and engineering background to build Wahoo from the ground up, starting with an idea and a willingness to work hard to realize his goals of making the best and most useful exercise equipment possible.

3.      The culture that Chip created within Wahoo lead to a mindset that "there's got to be a better way." The company was founded on innovation and has continued to invest in an extensive suite of products and software focused on cycling and endurance sports.

4.      That investment includes the spending of millions of dollars on R&D, marketing, manufacturing, and distribution to be a global leader in the smart trainer category through the KICKR family of smart indoor riding equipment and accessories.

1

5.      It is not an exaggeration to say that, through the KICKR family, and related products, Wahoo created a revolution across the cycling industry and continues to drive demand into global bike shops during the usually quiet winter season by supporting retailers across the world with best in class displays and desirable products throughout the KICKR ecosystem.

6.      More specifically, Wahoo's dedication to innovation is shown by its track record of bringing new technology to the marketplace. Wahoo's first product, the Ant+ Key, was introduced in 2009. The Ant+ Key was a better way to for athletes to track, measure and share training data from fitness sensors.

7.      Wahoo continued this innovation in 2012, with the introduction of the Blue HR and Blue SC, which were the first heart rate, speed, and cadence sensors that connected to an iPhone via Bluetooth technology.

8.      In 2013, Wahoo build on its idea of connected training with the introduction of the KICKR bicycle trainer, which simulates the resistance and feeling of being outdoors and allows athletes to bring the hard rides inside. This product changed the way cyclists train and sparked a new product category.

9.      Wahoo continued this innovation in 2015 with the KICKR SNAP, a more affordably priced indoor trainer, which allowed athletes to use the KICKR functionality without removing the rear wheel from the bicycle.

10.     After mastering tracking and sharing rides indoors and outdoors, Wahoo turned its efforts to making indoor training as accessible and immersive as possible. This focus resulted the 2018 introduction of the KICKR CORE, KICKR CLIMB, and KICKR HEADWIND, which bring indoors the elements and movement of outside riding (at a variety of price points).

11.     Wahoo followed this line of innovation with the 2019 introduction of the KICKR BIKE, a fully customizable indoor smart bicycle with grade simulation that uses the intuitive interface of your smartphone to recreate the feel of an outdoor ride. In short, the KICKR Bike blurs the line between virtual and reality.

12.     Most recently, in 2021 Wahoo introduced the SYSTM Training App, a fully-integrated training ecosystem.

13.     In short, Wahoo has been fueled by innovative products, a compelling ecosystem, great customer service, and a history of increasing customer awareness and demand. Wahoo is committed to being a leader in smart training and has a range of smart trainers, shown in the table below, that are competitively priced starting with the KICKR SNAP at $399 all the way up to the KICKR BIKE.



KICKR Smart Trainer                    KICKR CORE Smart Bike Trainer



KICKR ROLLR Smart Bike Roller Trainer

KICKR SNAP Indoor Bike Trainer

KICKR BIKE Smart Bike

14.     Aside from its record of innovation, Wahoo is also committed to helping the communities it calls home. Wahoo works in partnership with many different organizations, non-profits, and teams to provide resources and volunteers to help their missions. Wahoo also partners with organizations, teams, and athlete to break down barriers to participation and makes sporting activities more accessible and inclusive for people of all abilities. In addition, Wahoo is committed

to conservation of our environment, including by partnering with an Atlanta-based organization to ensure its waste is recycled and reused as much as possible.

15.     It is not surprising that, in view of Wahoo's dedication to its customers and its community, by creating innovative solutions to make difficult goals attainable and improve lives, legions of loyal Wahoo enthusiasts have affectionately dubbed themselves "Wahooligans."

16.     As is common in the industry, to protect its groundbreaking innovation and extensive investment, Wahoo has also invested in protecting its intellectual property through, among other things, patent protection. The U.S. patent system is predicated on the principle that patent protection will incentivize companies and individuals to continue to innovate and develop new products and ideas. Wahoo's strong commitment to innovation requires it to devote significant time and money to its ongoing development and improvement of technology.

17.     Wahoo maintains its intellectual property rights to protect these investment dollars so Wahoo can continue to provide innovation to the category and delight its customers by providing the most accurate and revolutionary products. Wahoo takes the protection of its intellectual property seriously. Wahoo has utilized the patent system exactly as that system is intended, to protect its continued efforts to improve the exercise technology available to its customers.

18.     Designing and manufacturing technology products is complex and expensive. Many companies have built successful Smart Trainer businesses without cutting corners and without violating patents. Wahoo encourages new entrants to indoor cycling to help drive innovation and growth.  However, allowing cheap, copycat products to sell illegally in the marketplace discourages investment from legitimate companies leading to stagnating innovation and lower product quality.

19.     Further, Wahoo sells its products through various channels, from its own web site and other online stores, through national retailers like REI and through independent bike shops throughout the US and Europe. Each channel plays an important role in Wahoo's go-to-market strategy and in the cycling industry overall. The selling of a copy of Wahoo's product only direct to consumers, thereby eliminating the retail channels, hurts the overall health of the cycling industry.

20.     To this day, Wahoo maintains its headquarters in Georgia, near Atlanta, and is still led by its original founders. Although it has a strong and ongoing history of repeated innovations, Wahoo remains a relatively small company.

## B. **DEFENDANT ZWIFT**

21.     On information and belief, Defendant Zwift is a Delaware corporation having its principal place of business at 111 West Ocean, Suite 1800, Long Beach, California 90802.  Upon information and belief, Zwift may be served through its registered agent, Incorporating Services, Ltd., 3500 S Dupont Hwy, Dover, Delaware 19901.

22.     Upon information and belief, Zwift sells and offers to sell its Hub product in the United States, including in this district. *See* https://us.zwift.com/pages/zwift-hub.

23.     On information and belief, when Zwift began its operations, it offered only software. Zwift also offered bicycle training devices sourced from other companies. Indeed, through its website, Zwift has long advertised and sold the Wahoo KICKR bicycle training device.

24.     In 2021, Zwift announced its intent to sell their own hardware devices. However, on information and belief, Zwift lacks Wahoo's track record and experience in making hardware, and subsequently encountered difficulties in developing its own hardware and decided to shelve its hardware products and lay off staff tasked with developing that hardware.

25.     In August 2022, Zwift announced its intention to sell the Zwift Hub. On information and belief, the Zwift Hub is a "white-labelled" product that Zwift acquires from another manufacturer and rebrands as the Hub.

26.     More specifically, the Hub is identical, in all material respects, to the KICKR CORE, one of Wahoo's innovative bicycle trainers. By copying the KICKR CORE, Zwift has infringed three of Wahoo's patents. By marketing a copy of Wahoo's patent-protected device, Zwift has taken a shortcut that allows it to reap the benefit of Wahoo's innovations, but without investing the time and money necessary to create Wahoo's innovations. As a result, Wahoo is forced to file this action to stop Zwift's infringement and to ensure Wahoo's ability to continue its strong history of innovation.

## JURISDICTION AND VENUE

27.     This Court has subject matter jurisdiction over the patent infringement claims in this Complaint under 28 U.S.C. §§ 1131 and 133(a) because this action arises under the patent laws of the United States, 35 U.S.C. § 1 *et seq*., including 35 U.S.C. § 271.

28.     On information and belief, Zwift is subject to this Court's specific and general personal jurisdiction, due at least to Zwift being organized and incorporated under the laws of this state. On information and belief, Zwift has also established minimum contacts in Delaware because its website, https://us.zwift.com/pages/zwift-hub, sells the accused product and is accessible in this district. Upon information and belief, Zwift regularly transacts business in the State of Delaware, Zwift engages in other persistent courses of conduct and derives substantial revenue from products and/or services in the State of Delaware, and Zwift has purposefully established substantial, systematic, and continuous contacts within this district and should reasonably expect to be sued in

a court in this district. For example, and in addition to the accused product, on information and belief, Zwift has sold its software to customers in this district.

29.     Venue is proper in this district pursuant to 28 U.S.C. § 1400(b) because Zwift is incorporated in Delaware.

30.     Venue is separately proper in this district pursuant to 28 U.S.C. § 1400(b) because Zwift has committed acts of patent infringement in this state and has a regular and established place of business in Delaware. Specifically, Zwift has committed acts of patent infringement in Delaware at least by offering for sale and selling the Zwift Hub in this district. *See* https://us.zwift.com/pages/zwift-hub.

## THE ACCUSED DEVICE

31.     Zwift has and continues to make, use, import, offer to sell, and/or sell in the United States bicycle training apparatus under the name "Hub."

32.     On its website, at https://us.zwift.com/products/zwift-hub, attached as Exhibit 2, Zwift markets the Hub device, including as shown below:

  

Home  >  All  >  Zwift Hub



# ZWIFT HUB

$499.00

Zwift Hub opens up the world of Zwift. Thanks to the smart trainer's automatic resistance you'll feel every climb and descent while the built-in power meter levels up your training.

And it comes with a pre-installed cassette to match the gears on your bike, which you choose at checkout.

Need Help Choosing The Right Cassette?

33.     On information and belief, Zwift obtains its Hub device from another company called JetBlack Cycling ("JetBlack"). JetBlack makes a bicycle trainer call the "Volt." JetBlack's website, at https://www.jetblackcycling.com/instructions/the-volt-trainer-information-set-up/, describes the Volt as follows:



The VOLT Trainer Information & Set Up - JetBlack Cycling

Product Information Design Specifications Total weight: 16.5KG Max User Weight: 120 kg Power Requirements: 100-240 VOLT™, 1.5A, 50Hz-60Hz Wireless Connection: Bluetooth FTMS and ANT+ FEC Resistance type: Electromagnetic braking system Accuracy: +/- 2% Maximum Simulated Grade: 16% Maximum Power Output: 1800 Watts Wireless software updates:...

www.jetblackcycling.com

34.     Upon information and belief, the Zwift Hub is simply a rebranded JetBlack Volt product. This is shown by press releases and industry analyses of the products. Specifically, an article in the industry website Bicycle Retailer, at https://www.bicycleretailer.com/product-tech/2022/09/06/zwift-releases-details-first-smart-trainer#.YzMVM-zMIeY, stated that Zwift has contracted with JetBlack to build the Hub:

Zwift contracted with JetBlack to build the trainers, with the Hub sharing similarities to the JetBlack Volt AU$1,200 ($900) smart trainer. The Hub weighs 33 pounds, including a 10.3-pound flywheel, and it can handle up to a 254-pound rider. It claims +/- 2.5% accuracy and max power of 1,800 watts. It can simulate up to 16% gradients.

35.     In addition, posts on the industry website, DCRainmaker, further show that Zwift's Hub is simply a rebranded JetBlack Volt trainer:

> Now, before we go too far, it's important to know one key detail: Zwift didn't make this trainer. At least not entirely. Instead, they're rebranding the <mark>JetBlack</mark> Volt smart trainer (which I reviewed a year ago), and repricing it significantly lower than the $849 it previously was. That very capable direct drive trainer did quite well in my testing, arguably better than some of the large trainer companies have done at the same price point.

(https://www.dcrainmaker.com/2022/09/zwift-hub-499-smart-trainer-hands-on-a-competition-killer.html). Consistent with these industry reports, a Zwift employee named Murray Healey made a post on the DCRainmaker website on September 6, 2022 further confirming that the Hub is simply a rebranded JetBlack product:



**Murray Healey**
September 6, 2022 at 10:17 pm

Reply
#75

Yes changes were made and both the Volt and Hub have enough clearance for Disc mounts. Always was on our list to change, timing of our frame change co inside with the Hub design and build.

36.     As such, on information and belief, documentation describing the structure and function of the JetBlack Volt product is also descriptive of the structure and function of Zwift's Hub.

### **WAHOO'S U.S. PATENT NO. 10,046,222**

37.     United States Patent No. 10,046,222, entitled "System and Method for Controlling a Bicycle Trainer" ("the '222 Patent"), was duly issued by the United States Patent and Trademark Office on August 14, 2018. A true and correct copy of the '222 Patent is attached as Exhibit 1.

38.     Wahoo owns all substantial right, title, and interest in and to the '222 Patent, including the sole and exclusive right to prosecute this action and enforce the '222 Patent against infringers, and to collect damages for all relevant times.

39.     Wahoo has sold, and currently sells, bicycle training apparatuses under the trademark KICKR and KICKR CORE, which practice the invention claimed in the '222 Patent.

40.     Wahoo has given, and continues to give, notice to the public, including Zwift, of its '222 Patent by listing that patent on its website at https://www.wahoofitness.com/patents, pursuant to 35 U.S.C. § 287.

### WAHOO'S U.S. PATENT NO. 10,933,290

41.     United States Patent No. 10,933,290, entitled "Bicycle Trainer" ("the '290 Patent"), was duly issued by the United States Patent and Trademark Office on March 2, 2021. A true and correct copy of the '290 Patent is attached as Exhibit 3.

42.     Wahoo owns all substantial right, title, and interest in and to the '290 Patent, including the sole and exclusive right to prosecute this action and enforce the '290 Patent against infringers, and to collect damages for all relevant times.

43.     Wahoo has sold, and currently sells, bicycle training apparatuses under the trademark KICKR and KICKR CORE, which practice the invention claimed in the '290 Patent.

44.     Wahoo has given, and continues to give, notice to the public, including Zwift, of its '290 Patent by listing that patent on its website at https://www.wahoofitness.com/patents, pursuant to 35 U.S.C. § 287.

### WAHOO'S U.S. PATENT NO. 11,090,542

45.     United States Patent No. 11,090,542, entitled "System and Method for Controlling a Bicycle Trainer" ("the '542 Patent"), was duly issued by the United States Patent and Trademark Office on August 17, 2021. A true and correct copy of the '542 Patent is attached as Exhibit 4.

46.     Wahoo owns all substantial right, title, and interest in and to the '542 Patent, including the sole and exclusive right to prosecute this action and enforce the '542 Patent against infringers, and to collect damages for all relevant times.

47.     Wahoo has sold and currently sells bicycle training apparatuses under the trademark KICKR and KICKR CORE, which practice the invention claimed in the '542 Patent.

48.     Wahoo has given, and continues to give, notice to the public, including Zwift, of its '542 Patent by listing that patent on its website at https://www.wahoofitness.com/patents, pursuant to 35 U.S.C. § 287.

## COUNT ONE
### (Infringement of U.S. Patent No. 10,046,222)

49.     Wahoo incorporates by reference and realleges each and every allegation of the previous paragraphs as if set forth herein.

50.     The '222 Patent generally describes a bicycle trainer with a frame, flywheel, and magnetic brake assembly that is operable for use with a conventional bicycle with its rear wheel removed.

51.     The written description of the '222 Patent describes in technical detail each of the limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patentably distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

52.     Zwift has made, used, sold, offered for sale, and/or imported into the United States, and continues to do so, bicycle training apparatuses sold under the tradename "Hub" that practice at least one claim of the '222 Patent.



53.     As set forth in the attached non-limiting claim chart (Exhibit 5), upon information and belief, Zwift, without authorization or license from Wahoo, has directly infringed and continues to directly infringe at least Claim 1 of the '222 Patent, either literally or under the doctrine of equivalents, by making, having made, using, distributing, selling, and/or offering for sale the Zwift Hub.

54.     Zwift's infringement of the '222 Patent has caused, and will continue to cause, Wahoo to suffer substantial and irreparable harm, entitling Wahoo to a preliminary injunction and a permanent injunction in accordance with 35 U.S.C. § 283.

55.     In addition, Wahoo has suffered and continues to suffer damage from Zwift's infringement of the '222 Patent. As such, Wahoo is entitled to compensation and other monetary relief to the extent allowed by law, pursuant to 35 U.S.C. § 284.

## COUNT TWO
### (Infringement of U.S. Patent No. 10,933,290)

56.     Wahoo incorporates by reference and realleges each and every allegation of the previous paragraphs as if set forth herein.

57.     The '290 Patent generally describes a bicycle trainer with a frame, flywheel, and magnetic brake assembly that is operable for use with a conventional bicycle with its rear wheel removed.

58.     The written description of the '290 Patent describes in technical detail each of the limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patentably distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

59.     Zwift has made, used, sold, offered for sale, and/or imported into the United States, and continues to do so, bicycle training apparatuses sold under the tradename "Hub" that practice at least one claim of the '290 Patent.



60.     As set forth in the attached non-limiting claim chart (Exhibit 6), upon information and belief, Zwift, without authorization or license from Wahoo, has directly infringed and continues to directly infringe at least Claim 1 of the '290 Patent, either literally or under the doctrine of equivalents, by making, having made, using, distributing, selling, and/or offering for sale the Zwift Hub.

61.     Zwift's infringement of the '290 Patent has caused, and will continue to cause, Wahoo to suffer substantial and irreparable harm, entitling Wahoo to a preliminary injunction and a permanent injunction in accordance with 35 U.S.C. § 283.

62.     In addition, Wahoo has suffered and continues to suffer damage from Zwift's infringement of the '290 Patent. As such, Wahoo is entitled to compensation and other monetary relief to the extent allowed by law, pursuant to 35 U.S.C. § 284.

## COUNT THREE
### (Infringement of U.S. Patent No. 11,090,542)

63.    Wahoo incorporates by reference and realleges each and every allegation of the previous paragraphs as if set forth herein.

64.    The '542 Patent generally describes a bicycle trainer with a frame, flywheel, and magnetic brake assembly that is operable for use with a conventional bicycle with its rear wheel removed.

65.    The written description of the '542 Patent describes in technical detail each of the limitations of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patentably distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

66.    Zwift has made, used, sold, offered for sale, and/or imported into the United States, and continues to do so, bicycle training apparatuses sold under the tradename "Hub" that practice at least one claim of the '542 Patent.



67.     As set forth in the attached non-limiting claim chart (Exhibit 7), upon information and belief, Zwift, without authorization or license from Wahoo, has directly infringed and continues to directly infringe at least Claim 1 of the '542 Patent, either literally or under the doctrine of equivalents, by making, having made, using, distributing, selling, and/or offering for sale the Zwift Hub.

68.     Zwift's infringement of the '542 Patent has caused, and will continue to cause, Wahoo to suffer substantial and irreparable harm, entitling Wahoo to a preliminary injunction and a permanent injunction in accordance with 35 U.S.C. § 283.

69.     In addition, Wahoo has suffered and continues to suffer damage from Zwift's infringement of the '542 Patent. As such, Wahoo is entitled to compensation and other monetary relief to the extent allowed by law, pursuant to 35 U.S.C. § 284.

## **REQUEST FOR RELIEF**

WHEREFORE, Wahoo respectfully requests the Court enter judgment in its favor and against Zwift on the patent infringement claims set forth above and respectfully requests that this Court:

(a) enter judgment that Zwift has infringed, and continues to infringe at least one claim of the '222 patent in violation of 35 U.S.C. § 271;

(b) award Wahoo all available and legally permissible damages and relief sufficient to compensate Wahoo for Zwift's infringement of the '222 patent, including to the full extent permitted by 35 U.S.C. § 284, together with interest, in an amount to be determined at trial;

(c) enter judgment that Zwift has infringed, and continues to infringe at least one claim of the '542 patent in violation of 35 U.S.C. § 271;

(d) award Wahoo all available and legally permissible damages and relief sufficient to compensate Wahoo for Zwift's infringement of the '542 patent, including to the full extent permitted by 35 U.S.C. § 284, together with interest, in an amount to be determined at trial;

(e) enter judgment that Zwift has infringed, and continues to infringe at least one claim of the '290 patent in violation of 35 U.S.C. § 271;

(f) award Wahoo all available and legally permissible damages and relief sufficient to compensate Wahoo for Zwift's infringement of the '290 patent, including to the full extent permitted by 35 U.S.C. § 284, together with interest, in an amount to be determined at trial;

(g) enter a preliminary injunction against Zwift, barring and enjoining its further making, using, selling, offering for sale, and/or importing into the United States of its Hub product for the duration of this lawsuit;

(h) enter a permanent injunction against Zwift, barring and enjoining its further making, using, selling, offering for sale, and/or importing into the United States of its Hub product, and any other infringing products;

(i) declare this to be an exceptional case under 35 U.S.C. § 285 and award Wahoo its costs, expenses, and disbursements in this action, including reasonable attorneys' fees;

(j) award Wahoo such other and further relief as may be permitted and is appropriate at law or in equity.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Wahoo hereby respectfully requests a trial by jury on all issues triable of right by a jury.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jennifer Ying*

_____

Jennifer Ying (#5550)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jying@morrisnichols.com

OF COUNSEL

Matthew L. Cutler
Douglas A. Robinson
HARNESS IP
7700 Bonhomme Ave., Suite 400
Clayton, MO 63038
(314) 726-7600
mcutler@harnessip.com
drobinson@harnessip.com

October 3, 2022

*Attorneys for Plaintiff Wahoo Fitness L.L.C.*

19