IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WAHOO FITNESS L.L.C., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 22-1295 (WCB) (SRF) |
| | ) |
| ZWIFT, INC., | ) |
| | ) |
| Defendant. | ) |

**STIPULATED ORDER CONCERNING DISCOVERY,
INCLUDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION
("ESI")**

After conferring on these matters, Plaintiff Wahoo Fitness L.L.C. and Defendant Zwift, Inc. (together, the "Parties") hereby stipulate to the following procedures concerning the discovery and production of ESI. The purpose of this Order is to govern discovery of ESI in this case as a supplement to the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Delaware, and any other applicable rules or order in this case. This Order may be further modified by written agreement of the Parties, subject to the approval of the Court.

1. **GENERAL PROVISIONS**

    a. <u>Proportionality</u>. The Parties will use reasonable, good faith and proportional efforts to preserve, identify and produce relevant information.[1] This includes identifying appropriate limits to discovery, including limits on custodians, identification of relevant subject matter, time periods for discovery and other parameters to limit and guide preservation and discovery issues.

---

[1] Information can originate in any form, including ESI and paper, and is not limited to information created or stored electronically.

    b. <u>Preservation of discoverable information</u>.  A party has a common law obligation to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody or control.

      (i) Absent a showing of good cause by the requesting party, the Parties shall not be required to modify, on a going-forward basis, the procedures used by them in the ordinary course of business to back up and archive data; provided, however, that the Parties shall preserve the non-duplicative discoverable information currently in their possession, custody or control.

      (ii) Absent a showing of good cause by the requesting party, the categories of ESI identified in Schedule A attached hereto need not be searched or preserved.

    c. <u>Privilege</u>.  The Parties agree to the following requirements for the formatting and contents of privilege logs:

      (i) Documents and information generated after filing of the Complaint (October 3, 2022) need not be included in the privilege log.

      (ii) Each entry shall contain a control number or other unique identifier that shall persist for the same document through any revisions or updates to the log.

      (iii) Each entry corresponding to privilege redactions in a produced document shall identify the Bates number of the redacted document.

      (iv) Each entry shall identify as available the date, sender, recipient(s), a brief description of the contents of the document sufficient to evaluate the assertion of privilege and the type of privilege asserted, and the nature of the privilege claimed.

    (v) Each party shall produce and maintain only one privilege log for withheld and redacted documents, with updates, revisions, and supplements causing reproduction of the single log in full, with new entries placed consecutively after pre-existing entries.

  2. **INITIAL DISCLOSURES**.  By the date set forth in the Scheduling Order, each party shall make its initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1).

  3. **NOTICE**.  The Parties shall identify any issues relating to:

    (i) Any ESI (by type, date, custodian, electronic system or other criteria) that a party asserts is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(C)(i), other than systems used solely for disaster recovery or archival purposes, which shall be presumed not to be readily accessible under Fed. R. Civ. P. 26(b)(2)(C)(i).

    (ii) Third-party discovery under Fed. R. Civ. P. 45 and otherwise, including the timing and sequencing of such discovery.

    (iii) Production of information subject to privacy protections, including information that may need to be produced from outside of the United States and subject to foreign laws.

Lack of proper notice of such issues may result in a party losing the ability to pursue or to protect such information.

  4. **INITIAL DISCOVERY IN PATENT LITIGATION**.

   a. Absent a showing of good cause, follow-up discovery shall be limited to a term of 6 years before the filing of the complaint, except that discovery related to asserted prior art or the conception and reduction to practice of the inventions claimed in any patent-in-suit shall not be so limited.

5.  **SPECIFIC E-DISCOVERY ISSUES.**

   a.  <u>On-site inspection of electronic media</u>.  Such an inspection shall not be permitted absent a demonstration by the requesting party of specific need and good cause.

   b.  <u>Search methodology</u>.  If the producing party elects to use search terms to locate potentially responsive ESI, it shall disclose the search terms to the requesting party.  Focused terms, rather than over-broad terms (e.g., product and company names), shall be employed.  Any search terms are intended to facilitate in the search of relevant, responsive, and non-objectionable documents to be produced.  Documents that hit upon search terms are not automatically required to be produced merely because they hit upon search terms used.  Search terms shall not, however, be considered to be the exclusive means of locating potentially responsive ESI.  Relevant and responsive ESI may be identified and located based how it is known to be kept in the ordinary course of business (e.g., sales and financial records, advertising, reports or presentations, inventor files, licensing contracts, etc.), and the Parties agree that good faith search efforts include endeavoring to identify material of known or reasonably identifiable location and type (subject to the requirements of proportionality, relevance, and responsiveness).

   c.  <u>E-Mail Discovery</u>. General ESI production requests under Federal Rules of Civil Procedure 34 and 45 shall not include email or other forms of electronic correspondence (such as text messages, voicemails, or instant messages (collectively, "e-mail")). To obtain e-mail, the Parties must propound specific e-mail production requests that shall be limited to specific discrete issues. The Parties agree to meet and confer regarding e-mail production requests before propounding any such requests and to discuss whether e-mail production requests are necessary and proportional to the needs of the Litigation. If the Parties agree that e-mail production requests are necessary and proportional to the needs of the Litigation, then the period for propounding email

production requests shall commence 90 days prior to the close of fact discovery and shall end 60 days prior to the close of fact discovery and email production requests shall be limited to 5 custodians per Party and 5 search terms per custodian across all requests absent an alternative agreement by the Parties or a Court Order finding a particularized need to expand these limits.

    d. <u>Format</u>.  ESI and non-ESI shall be produced to the requesting party as text searchable image files (e.g., PDF or TIFF).  When a text-searchable image file is produced, the producing party must preserve the integrity of the underlying ESI, i.e., the original formatting, the metadata (as noted below) and, where applicable, the revision history.  The Parties shall produce their information in the following format:  single page TIFF images (or JPEG for color documents) and associated multi-page text files containing extracted text or OCR with load files containing all requisite information including relevant metadata.

    e. <u>Native files</u>.  Files not easily converted to image format, including all Excel and Access files, should be produced in native format.  A party may request a native version of file not easily converted to image format, or for which the image is not readily legible, and if the Parties are unable to agree to its production after meeting and conferring, the requested party may move the Court for its production.  The producing party shall bear the burden to show why such document should not be reproduced in native format.  A producing party shall use the following specifications when converting ESI from its Native Format into TIFF image files prior to its production: (1) Tracked changes, author comments, hidden columns and hidden rows shall be turned "on" before production; and (2) Presenter notes will be made visible and Microsoft PowerPoint files shall be produced in notes view.

    f. <u>Metadata fields</u>.  The Parties are only obligated to provide the following metadata for all ESI produced, to the extent such metadata exists:  Custodian, File Path, Email

Subject, Conversation Index, From, To, CC, BCC, Date Sent, Time Sent, Date Received, Time Received, Filename, Author, Date Created, Date Last Modified, MD5 Hash or SHA Hash, File Size, File Extension, Control Number Begin, Control Number End, Attachment Range, Attachment Begin, and Attachment End (or the equivalent thereof).

g. <u>Compressed Files.</u> To the extent a receiving party cannot decompress a file that is the subject of a compression file type (i.e., .CAB, .GZ, .TAR, .Z, .ZIP), the producing party shall provide the contents of said file decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual folders and/or files.

h. <u>Artificial Intelligence.</u> The Parties may use artificial intelligence to review ESI for responsiveness and privilege, including predictive coding and other forms of machine learning.

i. <u>Deduplication.</u> A Party is only required to produce a single copy of a responsive document. Parties may deduplicate stand-alone documents or entire document families vertically within each custodian or horizontally (also referred to as globally) across custodians. Documents are exact duplicates if they have matching MD5 or SHA-1 hash values. When comparing document families if a parent document is an exact duplicate, but one or more attachments or embedded files are not exact duplicates, neither the attachments or embedded files nor the parent document will be deduplicated. To the extent emails are produced, attachments to emails shall not be eliminated from their parent emails. Where a stand-alone document is an exact duplicate of an email attachment, both the email attachment and the stand-alone document must be produced. For any stand-alone documents or document families deduplicated as part of the

processes described above, a semi-colon-delimited list of all collected custodians in possession of the deduplicated documents must be provided as part of the production metadata.

    j. <u>Redactions.</u>  A producing party may redact from any TIFF image, metadata field, or native file information that is protected from disclosure by applicable privilege or immunity; or that is governed by applicable privacy law or regulation protecting personal data (such as a person's date of birth, credit card numbers, telephone numbers, addresses, personal email addresses, social security numbers, racial or ethnic origin, political opinions, religious beliefs, and criminal records). Each redaction shall be indicated clearly. The production of a document in redacted form does not affect the producing party's obligation to properly document and substantiate the assertion of privilege over the redacted content.

| MORRIS, NICHOLS, ARSHT & TUNNELL LLP | FARNAN LLP |
|---|---|
| */s/ Jennifer Ying* | */s/ Brian E. Farnan* |
| Jennifer Ying (#5550)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE  19899<br>(302) 658-9200<br>jying@morrisnichols.com | Brian E. Farnan (#4089)<br>Michael J. Farnan (#5165)<br>919 North Market Street, 12th Floor<br>Wilmington, DE  19801<br>(302) 777-0300<br>(302) 777-0301<br>bfarnan@farnanlaw.com<br>mfarnan@farnanlaw.com |
| *Attorneys for Plaintiff* | *Attorneys for Defendant* |

May 5, 2023

  SO ORDERED this 8th day of May, 2023.

                  _____
                  WILLIAM C. BRYSON
                  UNITED STATES CIRCUIT JUDGE

## SCHEDULE A

1. Deleted, slack, fragmented, or other data only accessible by forensics.

2. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

3. On-line access data such as temporary Internet files, history, cache, cookies, and the like.

4. Data in metadata fields that are frequently updated automatically, such as last-opened dates.

5. Back-up data that are substantially duplicative of data that are more accessible elsewhere.

6. Voice messages.

7. Instant messages, including Slack, Teams, iMessage, Google Chat, WeChat, and Zendesk messages, and the like.

8. Electronic mail or pin-to-pin messages sent to or from mobile devices (e.g., iPhone and Blackberry devices), provided that a copy of such mail is routinely saved elsewhere, (e.g., on an email/Enterprise server).

9. Other electronic data stored on a mobile device, such as calendar or contact data or notes, provided that a copy of such information is routinely saved elsewhere.

10. Logs of calls made from mobile devices.

11. Server, system or network logs.

12. Electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved as part of a laboratory report.

13. Data remaining from systems no longer in use that is unintelligible on the systems in use.